IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

SYLVIA S. CORTINEZ,                     §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §          2:03-CV-0156
                                        §
JO ANNE B. BARNHART,                    §
Commissioner of Social Security,        §
                                        §
        Defendant.                      §

**REPORT AND RECOMMENDATION**
**TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff SYLVIA S. CORTINEZ brings this cause of action pursuant to 42 U.S.C. §

405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner

of Social Security (Commissioner), denying plaintiff's applications for disability benefits and

supplemental security income benefits (SSI).  For the reasons hereinafter expressed, the

undersigned United States Magistrate Judge recommends the Commissioner's decision finding

plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

On July 31, 2000, plaintiff filed an application for Disability Insurance Benefits alleging

she became unable to work on May 29, 2000, because of a disabling condition.[1]  (Tr. 94-96).  As

---

[1] On her application, plaintiff noted she had filed a previous application for disability benefits.  She also remarked: "I did not work in 1981, 1986-87 and worked little in 1988 and 1990.  Earnings were down some in 1995, far higher in 1994.  I earned less in 1996."  (Tr. 94, 96).

illnesses, injuries or conditions limiting her ability to work, plaintiff alleged "heart problems –

knee problems." (Tr. 106). Plaintiff alleged her heart condition first bothered her in February

1998, and that her knee problem first bothered her on May 29, 2000. She alleged her conditions

limit her ability to work in that she gets "tired fast" when standing, and that she is "hurting all

the time." Plaintiff explained she stopped working on May 29, 2000 because she "hurt [her]

knee - that caused [her] heart problems again." Plaintiff obtained her GED in 1978 and

completed a program at the Amarillo College of Hairdressing. (Tr. 112). Plaintiff identified past

work as a hairdresser (1991-2000), working 40 hours a week, for 5 days a week. (Tr. 107, 115-

16). Plaintiff filed an application for SSI on August 10, 2000. (Tr. 596-97). At the time she

filed her applications, plaintiff was 46-years-old. (Tr. 94).

On April 20, 2001, the SSA, identifying plaintiff's primary diagnosis as "coronary artery

disease (S/P multiple PTCA's)" and secondary diagnosis as "chronic lumbar pain syndrome,"

denied plaintiff benefits determining plaintiff's condition was not severe enough to keep her

from working.[2] (Tr. 70, 72-78; 598-605). On June 4, 2001, counsel was appointed to represent

plaintiff. (Tr. 26). Plaintiff, through counsel, requested the SSA reconsider its initial

determination, explaining she did not agree with the determination because her "back pain and

knee pain affect standing. A heart condition with high blood pressure also prevents substantial

gainful activity. I do not have RFC to continue hairdressing." (Tr. 79). On August 1, 2001, the

---

[2]In denying disability benefits, the SSA explained, "We have determined that your condition is not severe enough to keep you from working. . . . You said you were disabled because of heart problems, high blood pressure, bladder problems and a left knee injury. Medical reports show that these conditions are being treated. A physical examination and heart tests show evidence of some heart disease. These symptoms are not severe enough to be disabling. This problem required surgery. You no longer have chest pain. You do have high blood pressure but it has caused no serious damage to any part of your body. Medical reports show you have some problems with your left knee. This causes you some pain and discomfort. Although you said you have these symptoms, the evidence does not show that your ability to perform basic work activities is as limited as you indicated. Your overall medical condition may cause some restrictions. However, based on your description of your past job as a hairdresser, this condition does not prevent you from performing that work. (Tr. 78, 605).

SSA, identifying plaintiff's primary diagnosis as "ischemic heart disease" and her secondary

diagnosis as "disorders of back (discogenic and degenerative)," denied plaintiff benefits upon

reconsideration.[3]  (Tr. 71, 80-83; 606-09).

On September 26, 2001, plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"), explaining she disagreed with the determination on reconsideration because

"[d]ue to back pain, knee pain and angina, I am unable to fully perform past relevant work.  High

blood pressure and constant [pain] effect (sic) ability to stand on feet for time periods necessary

to be a hairdresser."  (Tr. 84).  On July 17, 2002, the ALJ conducted an administrative hearing.[4]

(Tr. 28-69).  On January 17, 2003, the ALJ rendered an unfavorable decision, finding plaintiff

not disabled at any time through the date of the decision.  (Tr. 12-21).

In his decision, under the section "Evaluation of the Evidence," the ALJ noted plaintiff

was 48-years-old, had the equivalent of a high school education, and specialized training as a

hairdresser.  (Tr. 16).  The ALJ noted plaintiff's past work experience as a hairdresser.[5]  The ALJ

acknowledged plaintiff's allegation that she became disabled on May 29, 2000 due to heart

problems, left knee problems, bladder problems and high blood pressure.  He further noted that

after the date of alleged onset of disability, plaintiff worked part time as a hairdresser, four days

---

[3]In again denying disability benefits, the SSA explained, "We have determined that your condition is not severe enough to keep you from working. . . .  You said you were disabled because of arthritis in your back and hands, knee pain, high blood pressure, shortness of breath, and heart problems.  However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines.  Although you said you have these conditions, the evidence does not show that your ability to perform basic work activities is as limited as you indicated.  Your overall medical condition may cause some restrictions.  However, based on your description of your past job as a hair dresser, this condition does not prevent you from performing that work."  (Tr. 83, 609).

[4]At the hearing, plaintiff also alleged depression as a "problem."  (Tr. 34, 41-42, 48).

[5]During the hearing plaintiff's counsel identified additional previous work in a drycleaning business and as a telephone solicitor.  (Tr. 54).

a week, 3-4 hours a day, but that such work activity did not rise to the level of substantial gainful activity because plaintiff did not earn more than $740.00 monthly for the year 2001.

Noting plaintiff's contention she became disabled in May 2000, the ALJ reviewed portions of the medical record from June 2000 to May 2002, noting successful surgical treatment of plaintiff's heart condition and no evidence of any significant knee problems since 2000. (Tr. 17). The ALJ also noted medical records since 2001 indicated plaintiff had been treated for low back pain and that her high blood pressure was reported as stable. The ALJ found the medical evidence indicated plaintiff had impairments of (1) coronary artery disease, (2) status post left knee arthroscopy, (3) high blood pressure, and (4) a history of back problems (discogenic and degenerative). The ALJ found these impairments were severe within the meaning of the Regulations, but that such impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ specifically noted plaintiff's cardiovascular conditions had "responded to surgical intervention" and were "reported as stable, and doing well, including the high blood pressure." The ALJ further noted plaintiff's back condition was "being treated conservatively without complications."

The ALJ then determined plaintiff's description of her limitations as preventing all work activity were not totally credible, explaining:

> There is no evidence the clamant has been seen for ongoing problems related to her left knee. She works part time as a hairdresser four days a week, three to four hours a day. She indicates she could lift and carry 10-15 pounds and sit one or two hours at a time. She drives an automobile, shops, sews, crochets and does housework. The claimant takes her medications as prescribed and alleges no incapacitating side effects. While the claimant experiences some back pain, chest pain and shortness of breath, her alleged limitations as to preventing all work activity are not credible.

(Tr. 18, 20). The ALJ then determined plaintiff retained the residual functional capacity (RFC)

to perform "a wide range of light work as determined by the State agency program physicians."

The ALJ clarified that he found plaintiff retained the RFC to:

> [P]erform work activities involving occasionally lifting and carrying up to 20
> pounds, and frequently lifting and carrying 10 pounds, can stand and walk for a
> total of 6 hours in an 8-hour day with normal breaks, is unlimited in pushing or
> pulling of hand/or foot controls, and can occasionally climb, kneel, crouch and
> crawl and frequently stoop and balance.

(Tr. 18, 20).  The ALJ found, based upon her RFC, that plaintiff was capable of performing a

significant range of light work as defined in 20 C.F.R. §§404.1567 and 416.967 impeded only by

the noted exertional limitations.  (Tr. 19, 21).

In determining whether plaintiff could perform any of her past relevant work, the ALJ

noted plaintiff was 48 years old, defined as a younger individual in the regulations, had a high

school equivalent education, and transferable skills from skilled work as previously performed.

(Tr. 19).  The ALJ acknowledged, however, that the issue of transferability of work skills was

superfluous.  "Giving the claimant the full benefit of the doubt as to her inability to perform her

past relevant work as a hairdresser as generally performed in the national economy and as she

performed the job," the ALJ found plaintiff was no longer capable of performing her past

relevant work as a hairdresser.  (Tr. 19, 20).

In his decision, the ALJ recited that he asked the vocational expert (VE) whether jobs

existed in the national economy for an individual of plaintiff's age, education, past relevant work

experience and RFC as determined.  The ALJ recited that the VE testified that, "assuming the

hypothetical individual's specific work restrictions, she is capable of making a vocational

adjustment to other work," *viz.*, as a companion, in cosmetic sales, as a surveillance monitor, or a

hand bander.  In his decision, the ALJ concluded that, based on the testimony of the VE, and

considering plaintiff's age, educational background, work experience, and RFC, plaintiff was

capable of making a successful adjustment to work that exists in significant numbers in the

national economy.  (Tr. 19-20, 21).  The ALJ thus concluded plaintiff was not under a disability

as defined in the Social Security Act at any time through the date of his decision.  (Tr. 20).

In her request for review of the ALJ's decision, plaintiff, represented by counsel, argued,

"The decision is not supported by substantial evidence."  (Tr. 9).  Upon the Appeals Council's

denial of plaintiff's request for review on May 2,  2003, the ALJ's determination that plaintiff

was not under a disability became the final decision of the Commissioner.  (Tr. 5-7).  Plaintiff

now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to

determining whether substantial evidence exists in the record, considered as a whole, to support

the Commissioner's factual findings and whether any errors of law were made.  *Anderson v.*

*Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  Substantial evidence is "such relevant evidence as a

responsible mind might accept to support a conclusion.  It is more than a mere scintilla and less

than a preponderance."  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  To determine whether

substantial evidence of disability exists, four elements of proof must be weighed: (1) objective

medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's

subjective evidence of pain and disability; and (4) claimant's age, education, and work history.

*Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92,

94(5th Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they

are conclusive, and the reviewing court may not substitute its own judgment for that of the

Commissioner, even if the court determines the evidence preponderates toward a different

finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are

to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th

Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical

evidence" will produce a finding of no substantial evidence.  *Hames v. Heckler*, 707 F.2d at 164.

Stated differently, the level of review is not *de novo*.  The fact that the ALJ <u>could</u> have found

plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case comes to federal

court with the issue being limited to whether there was substantial evidence to support the ALJ

decision.

III.
<u>MERITS</u>

Plaintiff's brief in support of his application presents the following issues for review:

1.      Whether the ALJ erred when he determined plaintiff did not have a listed
        impairment;

2.      Whether the finding by the ALJ that petitioner retains the residual
        functional capacity (RFC) to perform light work was supported by
        substantial evidence.

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step

sequential analysis.  Therefore, this Court is limited to reviewing only whether there was

substantial evidence in the record as a whole supporting a finding that plaintiff retained the

ability to perform other work that exists in significant numbers in the national economy, and

whether the proper legal standards were applied in reaching this decision.

A.

Listed Impairment

Plaintiff argues the ALJ erred because he failed to find plaintiff's coronary artery disease

(CAD)  met or medically equaled the listed impairment set forth in Listing 4.04C, *Ischemic heart*

*disease*.[6]  Such Listing requires evidence establishing, as relevant here:

1.      ischemic heart disease;

2.      with chest discomfort associated with myocardial ischemia, as described
        in 4.00E3;

3.      while on a regimen of prescribed treatment;

4.      with coronary artery disease;

5.      demonstrated by angiography (obtained independent of Social Security
        disability evaluation);

6.      conclusion by an evaluating program physician, preferably one
        experienced in the care of patients with cardiovascular disease, that
        performance of exercise testing would present a significant risk to the
        claimant;

7.      angiographic evidence

8.      revealing 50 percent or more narrowing

9.      involving a long (greater than 1 cm) segment

10.     of a nonbypassed coronary artery; and

11.     marked limitation of physical activity;

12.     demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on
        ordinary physical activity, even though the individual is comfortable at
        rest.

---

[6]In her brief to this Court, plaintiff argues she suffers from the following severe and disabling impairments: (1) stenosis of the coronary arteries, including 40 percent proximal right stenosis; (2) anxiety; (3) depression; (4) weakness and shortness of breath on exertion; (5) fatigue and "falls asleep"; (6) left knee meniscal tear; and (7) hypertrophic facet disease at L-4 and L-5 impinges upon the canal and foramina.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04C.  Plaintiff first notes the ALJ, in his decision,

found plaintiff has severe CAD (apparently relating to requirement 4 above).  Plaintiff then cites

the Court to a portion of a March 24, 2001 medical report from Northwest Texas Healthcare

System wherein the cardiac catheterization lab evaluation found plaintiff to have:

> [E]xcellent left ventricular function, normal thoracic and abdominal aorta, and
> only moderate atherosclerotic disease, 40% proximal right stenosis in a tubular
> fashion, very dominant right, nondominant circumflex with *50% stenosis in a
> long tubular fashion in the stent of the circumflex*.  The LAD stent was widely
> open.  In the middle of the LAD just after the diagonal takeoff, there appeared to
> be a slit-like narrowing; this was angioplastied successfully. . . .

(portion cited by plaintiff in italics).[7]  Plaintiff appears to argue this record meets requirements 7-

10 listed above.  Plaintiff then argues evidence of the marked limitation of physical activity

(referring to requirement 11 above), the "other requirement of that listing . . . is found repeatedly

throughout the records, but strikingly at Tr. 540."  The cited medical record is an August 23,

2002  "Visit Form" from Northwest Texas Healthcare System wherein the nurse noted:

> Follow up visit.  Complains of "no strength" and shortness of breath with
> exertion, fatigue and falls asleep.  Describes of "constant" pain in chest extending
> into back and "heaviness" in chest. . . .  Occasional "lightheadedness."
> Complains of pain in hands with use.

Upon examination, the physician noted plaintiff's history of CAD, hypertension and elevated

cholesterol.  The doctor also noted plaintiff was reporting "some fatigue."  The doctor found

plaintiff's CAD and hypertension were stable and instructed plaintiff to continue with her

medications as directed.  (Tr. 540).

    Plaintiff has not cited any additional portions of the record which she contends support

---

[7]Plaintiff's stenosis of the circumflex artery, although reflecting a 50% diffuse and stent stenosis, had satisfactory flow to the nondominant OM-1, OM-2 and OM-3.  (Tr. 168).  The physician, while performing a successful angioplasty on plaintiff's LAD artery, did not to take any action with regard to the circumflex artery.

her allegation that her heart condition meets <u>all</u> of the requirements of Listing 4.04C set forth in

numeric listing form above.  Instead, in her reply brief, plaintiff argues the portion of the May

24, 2001 record cited in her original brief wherein the word "stenosis" was employed by the

doctor was sufficient to show she meets the requirement of a showing of "ischemic heart

disease" in requirement 1 because "stenosis" is "synonymous with ischemia."[8]  Plaintiff also

argues she has shown she meets requirement 5 because the May 24, 2001 findings were

generated in a cardiac catheterization lab evaluation and a "heart cath is angiography."  Plaintiff

further argues she has demonstrated requirement 9 (requiring involvement of a long - greater

than 1 cm - segment) because the physician would not have utilized the term "long" in the May

24, 2001 report unless the stenosis was in a segment longer than 1 cm.  Plaintiff argues she has

demonstrated requirement 10 (a nonbypassed coronary artery) because the listing does not

differentiate between a narrowing in the coronary artery itself or, instead, in the coronary artery

as modified by the stent.  Lastly, plaintiff argues she has demonstrated requirement 11 (marked

limitation of physical activity) because the term "marked" is a "very vague and nebulous

concept" and an "individual need not be precluded from performing an activity to have a marked

limitation."  *Citing* 20 C.F.R., Pt. 404, Subpt. P., App. 1, 14.00D8 (addressing the Listing for

human immunodeficiency virus).

The burden at Step 3 is on the plaintiff and she has not adequately demonstrated she

meets each of the criteria for the listing.  Plaintiff has not shown an evaluating physician has

concluded that "performance of exercise testing would present a significant risk" to plaintiff.  In

---

[8]*Ischemia* is defined as the deficient supply of blood to a body part (as the heart or brain) that is due to obstruction of the inflow of arterial blood (as by the narrowing of arteries by spasm or disease.  *Stenosis* is defined as a narrowing or constriction of the diameter of a bodily passage or orifice.  *Medline Plus Online*.

fact, on March 28, 2001, only four (4) days after the medical report upon which plaintiff relies

almost exclusively as evidence that she meets the Listing, plaintiff underwent a stress myocardial

perfusion study.  (Tr. 457-77).  Specifically, plaintiff underwent a Bruce exercise tolerance test

for 4 minutes and 2 seconds achieving a maximum heart rate of 71 and maximum blood pressure

of 179/88.  Plaintiff's test was terminated for "[e]xhaustion without chest pain" and the EKG

showed "[n]o stress-induced EKG changes."  (Tr. 457).  The test results showed "[n]ormal

perfusion without evidence of stress-induced ischemia or myocardial infarction," "[n]ormal left

ventricular size and function," and "[n]o significant interval change when compared with

[plaintiff's] previous study dated 10 September 2000."

Nor has plaintiff shown the ALJ determination that she did not have a "marked limitation

of physical activity" was without the evidentiary support necessary to avoid reversal.  Plaintiff

has not demonstrated she meets each of the criteria necessary to meet Listing 4.04C.

Plaintiff alternatively argues that even if the specific requirements of 4.04C have not

been met, she has nonetheless made a showing that her impairment is *medically equivalent* to the

4.04C Listing.  A marked limitation of physical activity, however, is a prerequisite of any

equivalency determination.  Although plaintiff has repeatedly complained of fatigue, anginal

discomfort, and other limiting symptoms, the record does not provide objective medical evidence

indicating plaintiff's physical activity is markedly limited.  Plaintiff testified she was still

working as a hairdresser four (4) days a week, for 3-5 hours a day, but explained she was losing

customers because her heart problems "forced [her] to slow down [her] work by not being able

to give a haircut in 15 minutes, 20 minutes."  (Tr. 37).  Plaintiff complained her heart problem

caused shortness of breath upon walking approximately 50 yards.  (Tr. 40).  During the exercise

test performed on May 28, 2001, however, plaintiff was able to adequately walk for 4 minutes

and 2 seconds at speeds starting at 1.7 mph and progressing to 2.5 mph, at a 10% and 12% grade. (Tr. 459).  Further, plaintiff acknowledged her doctors told her she should be walking and doing exercise.  (Tr. 42).  Plaintiff also acknowledged she can take care of her personal needs, go grocery shopping (even though she prefers not to buy big quantities of groceries), and is able to do housework including sweeping, mopping, washing dishes, cooking, making the bed, and doing the laundry, even though such activities take longer to complete than they used to.  (Tr. 45-46).  Plaintiff testified she drives herself to work and to the store, crochets and knits a small amount, and helps at church printing out the children's studies and taking roll.  (Tr. 47-48).  At most, there is a conflict in the evidence regarding a marked limitation of physical activity which the ALJ resolved.  Plaintiff has not demonstrated the ALJ's resolution of the conflict in the evidence was unreasonable or was not supported by some evidence.  Moreover, plaintiff has not demonstrated, as is her burden at Step 3, a marked limitation of physical activity caused by her heart problems.

As the ALJ determined, plaintiff's cardiovascular conditions have responded to surgical intervention and are reported as stable and doing well, including the high blood pressure.[9]  The objective medical evidence, as well as plaintiff's testimony as to her activities of daily living, do not support plaintiff's claim that her heart condition is *medically equivalent* to Listing 4.04C. Plaintiff has not shown the Commissioner's decision that her heart condition did not meet or medically equal a listed impairment under Listing 4.04C is not supported by sufficient objective medical evidence of record so as not to meet the substantial evidence requirement.

---

[9]In 1999, a medical record indicated plaintiff's uncontrolled hypertension was most likely secondary to anxiety.  (Tr. 385). In 2000, plaintiff self-discontinued her blood pressure medications.  (Tr. 377-78).  On February 26, 2001, plaintiff's blood pressure was 138/76, plaintiff was reported to be "doing well," her blood pressure medications were refilled, and she was directed to return to the clinic in one year.  (Tr. 491).  On August 23, 2002, plaintiff's hypertension was reported as stable.  (Tr. 540).

B.
Plaintiff's Residual Functional Capacity

Plaintiff next argues the ALJ's finding that she retained the residual functional capacity

(RFC) to perform a significant range of light work was not supported by substantial evidence.

Plaintiff contends the only things cited by the ALJ as supportive of his RFC finding were (1) his

adverse ruling as to plaintiff's credibility, and (2) the RFC evaluations made by the State agency

physicians.  Plaintiff argues credibility rulings do not constitute evidence and, thus, the ALJ's

refusal to believe all of plaintiff's testimony cannot constitute substantial evidence to support his

RFC finding.  Plaintiff also argues the opinions of the State agency physicians are not supported by

actual medical records and clinical findings and, therefore, the RFC evaluations are conclusory and

cannot constitute substantial evidence of plaintiff's RFC.

In his decision, the ALJ reviewed certain portions of the medical record from June 2000 to

May 2002, specifically finding plaintiff's heart condition had been successfully treated by surgical

procedures, and that there was no evidence of any significant knee problems since her arthroscopy

in August 2000.  The ALJ found the medical records since 2001 indicated plaintiff had been treated

for low back pain, that her high blood pressure was reported as stable, and that her May 2002 stent

replacement had been successful without complications.  The ALJ concluded plaintiff's

cardiovascular conditions had responded to surgical intervention and were reported as stable and

doing well, including the high blood pressure.  The ALJ noted plaintiff's back condition was being

treated conservatively without complications.  Only after discussing and evaluating this medical

evidence did the ALJ determine plaintiff's allegations of limitations preventing all work activity

were not totally credible, and proceed to make the determination that plaintiff had the RFC as

determined by the State agency program physicians.  The credibility determination was not the sole

basis for the ALJ's RFC finding.  The ALJ was not required to accept plaintiff's statement of her

limitations without question.  He properly considered his evaluation of plaintiff's credibility in

determining the degree of pain plaintiff was experiencing and the effect of it and plaintiff's

impairments on her ability to engage in any substantial gainful activity.

After determining plaintiff's RFC, the ALJ, at the hearing, had the following exchange with

the VE:

> Q.      The first hypothetical I'm going to ask you about the same vocational profile,
> younger person, high school equivalency, and past work.  (INAUDIBLE) in
> the file.  Assume also the person can lift and carry 10 pounds frequently, 20
> pounds occasionally.  *Stand/walk six of eight hours.*  Push/pull
> (INAUDIBLE).  The following postural limitations.  Climbing activities
> would be occasional only, that would include ramps, stairs, (INAUDIBLE),
> scaffolds.  Also occasional only would be kneeling (INAUDIBLE).  Could
> this person do the past work?
>
> A.      Yes.
>
> Q.      Second hypothetical, let's assume in this hypothetical number two everything
> is the same as the first one, except for the following.  The person would be
> *limited in standing so that standing would be occasional only.*  Could that
> person do the past work?
>
> A.      Not on a full time basis.
>
> Q.      Is there other work that such person could do?
>
> A.      Yes, sir.

(emphasis added).  The VE then proceeded to name the alternative jobs a person described in the

second hypothetical could perform, *i.e.*, a person "limited in standing so that standing would be

occasional only."

In his written decision, the ALJ noted plaintiff's treatment for low back pain and found, as

one of plaintiff's impairments, plaintiff's history of back problems (discogenic and degenerative).

The ALJ also found plaintiff's back condition was being treated conservatively without

complications.  Noting plaintiff experiences some back pain, the ALJ nonetheless adopted the RFC

for a wide range of light work "as determined by the State agency program physicians," and

specifically found plaintiff retained the RFC which included the ability to "*stand and walk* for a

total of 6 hours in an 8-hour day with normal breaks."

Plaintiff, construing the state agency determination relied upon by the ALJ as a finding that

plaintiff "could <u>stand</u> six hours per work day,"[10] argues such finding is not supported by the medical

evidence, is thus conclusory and cannot constitute substantial evidence to support the ALJ's

determination of non-disability.  As conclusive evidence that plaintiff cannot <u>stand</u> six hours per

work day, plaintiff points to an October 23, 2000 MRI report of plaintiff's lumbar spine indicating

hypertrophic facet disease impinging upon the canal and foramina at L5-S1, and to a slightly lesser

extent at L4-5, where plaintiff had a previous disc dissection in the 1980s.  (Tr. 155).  Plaintiff

maintains this MRI report fully accounts for the severe low back pain of which she complains and,

thus, the RFC determination that she can <u>stand</u> for six hours is not supported by substantial

evidence.

In response, the Commissioner points the Court to a January 29, 2001 internal medicine

consultative exam where the physician found only "mild to moderate lumbar tenderness," and

plaintiff was "able to bend over with her fingertips remaining around four inches above the floor"

and was "able to arise with minimal difficulty."  (Tr. 159).  Neurological examination revealed

good grip strength bilaterally, that plaintiff could do a few steps of tiptoe and heel walking,

although she had a mild limp on the left side, no muscle weakness or atrophy, deep tendon reflexes

2+ and symmetrical and pinprick and vibratory sensation within normal range in all extremities.

The Commissioner argues this report reveals a significant absence of objective factors and justifies

---

[10]The RFC stated did not address plaintiff's ability to stand only, rather it addressed plaintiff's ability to stand <u>and</u> walk.

the ALJ's conclusion that plaintiff's complained of pain was not disabling.  The Commissioner

notes the ALJ recognized plaintiff's severe impairment of a history of back problems, but argues the

existence of her impairment did not render her incapable of engaging in *any* substantial gainful

activity.

In reply, plaintiff argues the internal medicine consultative exam upon which the

Commissioner relies "shows on its face that this claimant does not have the [RFC] for SGA."

Plaintiff argues the physician opined she could not sit for more than ten minutes or walk for a half

block without triggering back pain, and that simply standing triggers lower back pain.  Plaintiff also

argues the physician opined she might be able to lift up to fifteen pounds for one or two times

without having problems and may be able to carry it for ten yards.  Plaintiff appears to argue such

"opinions" conclusively demonstrate she could not stand for six hours in a work day because of her

back pain.[11]

It appears the medical evidence as to whether plaintiff could or could not stand and walk six

hours in an eight-hour day is, at most, conflicting.  Conflicts in the evidence are to be resolved by

the ALJ, not the courts, and are to be upheld unless there is a conspicuous absence of credible

choices.  Consequently, but for the presence of an additional factor which plaintiff has not argued,

analysis of this issue would end with the ALJ's resolution of the conflict and the ALJ's adoption of

the state agency physician's determination of RFC would not be reversible.  However, the presence

of this additional factor, *viz.,* the ALJ's determination that plaintiff is unable to return to her past

relevant work as a hairdresser, clouds this analysis.  The VE's testimony at the administrative

---

[11]Neither party cites the accompanying report of the orthopedic surgeon who ordered the MRI of plaintiff's lower back upon
which plaintiff relies as conclusive evidence that she cannot stand for six hours in a work day.  In his November 13, 2000 entry, the
physician ordered an aggressive physical therapy program for leg and back conditioning.  In his January 15, 2001 entry, the
physician noted plaintiff's medications were helping significantly in regard to her back, that plaintiff was doing water, low
impact exercises which were good for her back, and ordered a continuation of plaintiff's "present activities."

hearing was, in effect, that an individual who could stand and walk six hours in an eight-hour day (the first hypothetical individual posed by the ALJ) would be capable of performing the work of a hairdresser. The ALJ, however, found plaintiff was unable to return to her past relevant work as a hairdresser (acknowledging the ALJ stated such finding was made to give plaintiff the "full benefit of the doubt"). Consequently, a conflict exists in the ALJ's findings, *to wit*: the ALJ's determination that plaintiff cannot return to her past relevant work as a hairdresser, and his finding that plaintiff is capable of standing and walking for six hours in a work day.

If this Court assumes, for purpose of argument only, that the ALJ's RFC finding that plaintiff could stand and walk for six hours in a work day was not supported by substantial evidence and was, therefore, error, a determination would have to be made as to whether such error was reversible. No reversible error occurred here. Immediately after the VE testified a hypothetical person who could stand/walk six of eight hours could perform the work of a hairdresser, the ALJ presented the VE with a second hypothetical for an individual who was limited in standing to "occasional" standing only. In response to this second hypothetical, the VE testified to other work that could be performed by such an individual, identifying the jobs of companion, cosmetic sales, surveillance monitor, and hand bander. Consequently, there is sufficient evidence to support a determination that plaintiff was capable of "occasional" standing. Plaintiff's testimony clearly supports that finding. As an individual capable of occasional standing would be able to perform the jobs identified in response to the second hypothetical, there is substantial evidence that plaintiff could perform the work identified by the VE and, consequently, is not disabled. Therefore, any error in the ALJ's RFC with regard to plaintiff's ability to stand and walk for six hours is harmless error and not reversible.

## IV.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be AFFIRMED.

## V.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record by certified mail, return receipt requested, and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 12th day of June 2006.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation.  Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections must be filed **on or before the fourteenth (14ᵗʰ) day after this recommendation is filed**.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this

report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).